UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID HOLLOWAY,

        Petitioner,

                                      CASE NO. 2:08-CV-10397

v.                                   JUDGE BERNARD A. FRIEDMAN
                                    MAGISTRATE JUDGE PAUL J. KOMIVES

BARRY D. DAVIS,

        Respondent.[1]

—————————————————/


# REPORT AND RECOMMENDATION

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.   *Prosecutorial Misconduct (Claims I & IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           a. Shifting Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           b. Notice of Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    E.   *Submission of Conspiracy Charge (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    F.   *Jury Instructions (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           a. Conspiracy Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
           b. Theory of the Case Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    G.   *Ineffective Assistance of Counsel (Claim V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           a. Prosecutorial Misconduct and Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . 27
           b. Failure to Call Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
           c. Failure to Request Limiting Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    H.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    I.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

---

[1]By Order entered this date, Barry D. Davis has been substituted in place of Douglas Vasbinder as the proper respondent in this action.

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.  The Court should also deny petitioner a certificate of appealability.

II.   REPORT:

A.    *Procedural History*

1.    Petitioner David Holloway is a state prisoner, currently confined at the Newberry Correctional Facility in Newberry, Michigan.

2.    Petitioner was tried on numerous charges in two separate cases consolidated for trial. On August 27, 2004, petitioner was convicted of armed robbery, conspiracy to commit armed robbery, carrying a concealed weapon, resisting and obstructing an officer, and possession of a firearm during the commission of a felony, following a jury trial in the Macomb County Circuit Court.  On October 5, 2004, he was sentenced to a term of 228-720 months' imprisonment on the armed robbery conviction, to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction, and to lesser concurrent terms of imprisonment on the remaining charges.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS AND HIS AM VI RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL MOVED TO JOIN CASES WHICH OTHERWISE WOULD HAVE REMOVED HIGHLY PREJUDICIAL EVIDENCE FROM THE MISJOINED TRIAL.

    II.   DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN HE WAS UNFAIRLY OBLIGED TO STAND TRIAL ON HIS MISJOINED COUNTS.

    III.  DEFENDANT WAS DEPRIVED OF HIS AMS V AND XIV RIGHTS OF DUE PROCESS WHEN THE PROSECUTING ATTORNEY ATTEMPTED TO SHIFT THE BURDEN OF PROOF.

Petitioner filed a *pro se* supplemental brief raising five additional claims:

I.      THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR DIRECTED VERDICT RELATING TO THE CHARGE OF CONSPIRACY TO COMMIT ARMED ROBBERY. THIS ERROR WAS COMPOUNDED WHEN THE TRIAL COURT GAVE IMPROPER JURY INSTRUCTIONS ON THE CONSPIRACY CHARGE WHICH OMITTED KEY ELEMENTS THAT UNDOUBTEDLY CONFUSED THE JURY TO DEFENDANT'S DETRIMENT WHICH DENIED DEFENDANT HIS RIGHT TO A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.

II.     THE TRIAL COURT ERRONEOUSLY DENIED DEFENDANT HIS SIXTH AND FOURTEENTH AMENDMENT RIGHT TO A FAIR AND IMPARTIAL TRIAL WHEN THE COURT FAILED, SUA SPONTE, TO INSTRUCT THE JURY ON THE LAW APPLICABLE TO DEFENDANT'S THEORY OF THE CASE, WHICH DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE.

III.    DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO REASONABLE NOTICE WHEN THE PROSECUTOR, DURING CLOSING ARGUMENTS, ENCOURAGED THE JURY TO CONVICT DEFENDANT OF CRIMES FOR WHICH HE WAS NEVER CHARGED, THIS, IN EFFECT, CAUSED A FATAL VARIANCE IN THE INFORMATION AND DEPRIVED DEFENDANT OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL, AS WELL AS HIS CONSTITUTIONAL RIGHT TO A UNANIMOUS JURY VERDICT.

IV.     DEFENDANT WAS DEPRIVED OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S CLOSING ARGUMENT WHICH URGED THE JURY TO FIND DEFENDANT GUILTY OF CRIMES OF WHICH DEFENDANT WAS NEVER CHARGED, THIS CAUSED A VARIANCE IN THE INFORMATION WHICH WAS DETRIMENTAL TO THE DEFENSE. COUNSEL WAS ALSO INEFFECTIVE FOR FAILING TO REQUEST THAT THE JURY BE INSTRUCTED ON DEFENDANT'S THEORY OF THE CASE, FAILED TO OBJECT TO THE TRIAL COURT'S INSTRUCTIONS ON THE CONSPIRACY CHARGE WHICH UNDOUBTEDLY CONFUSED THE JURY, FAILED TO CALL PATRICIA CARSON AS A DEFENSE WITNESS, AND FAILED TO REQUEST [A] CAUTIONARY INSTRUCTION THAT DEFENDANT'S

PRIOR CONVICTIONS COULD NOT BE USED AS SUBSTANTIVE EVIDENCE OF GUILT.

V. DEFENDANT IS ENTITLED TO CREDIT AGAINST HIS NEW MINIMUM SENTENCE FOR THE ELEVEN MONTHS SERVED IN JAIL PRIOR TO HIS SENTENCE FOR A CRIME COMMITTED WHILE ON PAROLE. AT A MINIMUM, DEFENDANT IS ENTITLED TO REMAND FOR AN EVIDENTIARY HEARING.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Holloway*, No. 258671, 2006 WL 1112946 (Mich. Ct. App. Apr. 27, 2006) (per curiam).

4.     Petitioner sought leave to appeal in the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Holloway*, 477 Mich. 913, 722 N.W.2d 834 (2006).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 28, 2008. As grounds for the writ of habeas corpus, he raises the third claim raised by counsel in the Michigan Court of Appeals (Claim I here), and the first four claims raised in his supplemental *pro per* brief in the court of appeals (Claims II-V).

6.     Respondent filed his answer on August 11, 2008. He contends that petitioner's claims are without merit or barred by petitioner's procedural default in the state courts.

7.     Petitioner filed a brief in support of the petition on September 29, 2008, and filed a reply to respondent's answer on March 12, 2009.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arise from the robberies of the same Wendy's restaurant in Detroit on August 9, 2003, and November 3, 2003. The evidence adduced at trial was accurately summarized in the brief filed by petitioner's counsel in the Michigan Court of Appeals:

4

On the night of November 3, 2003, Ursula [sic] Holloway was the assistant manager of a Wendy's at 8 Mile and Mound Road in the City of Warren [sic], Michigan.[2] On leaving the premises she went out the back door toward her truck in the company with a fellow employee, Anthony. As she approached her truck a man jumped out from behind a barricade where he and another had been hiding and pointed a gun at her. She identified Defendant as the one who was wearing a gray hood. Defendant said "Let's go . . . this ain't none of your money." She unlocked the door and he told her if the alarm goes off he was going to blow her head off. They went into the store, unlocked the safe and he let the other man, who was not armed, into the store. After she opened the safe, they knelt down and started taking the money out, about $1700. Defendant badgered her to open another safe inside the first safe but she didn't know the combination. After taking the money they left. There was about $40 in coins. She then called 911.

About three months before the described incident, on August 9, at about 15 minutes before the dining room closed, Defendant walked in and placed a food order. When the witness told him that the dining room was closed he walked toward the door and as he did so he stuck a silver gun in her side and said, "Let's do this" ordering her to the safe. Other employees knelt down while she opened it. He took $273 and left. She identified the coin tray and the silver handgun, stating she had seen the gun in both robberies. She also identified cream colored gloves and a black hooded sweatshirt as Defendant's. She denied knowing Defendant or having seen him since November 3. She identified Defendant as having robbed her both times.

She acknowledged that she lived in the city of Detroit, ZIP code 48205 in the past and had lived in Park Grove, five blocks from where she presently lived. She was unable to remember her previous address but then acknowledged it as 15470 Park Grove.

A man by the name of Gulley Moon was hired who also lived at the address on Park Grove and who was robbed at the same store. She acknowledged that on the second occasion, she had not told the police that Defendant had robbed her previously. She explained that she was nervous. She only identified him after other employees had done so. She denied being a relative of Defendant. She said Moon was fired because he and his brother participated in a robbery at which she was not present.

Dorian Sumerlin, an employee of Wendy's [on] November 3, 2003 said that as she was leaving the store she saw two men running out of the alley and driving away in a black Yukon. One was short, wearing all black and the other was wearing a blue, white and yellow coat. She identified Exhibit 17 as a picture of the man who

---

[2]It appears that the victim's name is actually Urslia, not Ursula. In this quotation from petitioner's court of appeals brief, I use the spelling utilized by counsel without correction. Throughout the remainder of this Report, I use the correct spelling. The Michigan Court of Appeals described the restaurant as being in Detroit, while petitioner's brief placed the restaurant in Warren. As Eight Mile Road divides the two, the location depends upon which side of the road, north or south, the restaurant is located. In any event, the city in which the restaurant was located is irrelevant.

was running out of the alley. She ran back to the store, asked if they had been robbed and the police were called.

She was working August 9, 2003 when she was told by her boss, Ursula to go back and do as a robber said. She described him as short clean-cut, with a mustache. She said they all knelt down and the robber waved the gun in their face demanding money or he was going to shoot them. Ursula opened the safe and gave him a little bit of money and he left in a green LeBaron with a white rag top. She saw the man again the second time they were robbed, on November 3, and identified him as Defendant.

Anthony Patterson said that when he left the store Defendant and another man ran from around Ursula's truck and ordered them back into the store. They were wearing hoodies and jackets. The man other than Defendant had a silver .380 pistol. The witness, as ordered, laid down by the bun rack. He identified the gun and said the men ran down the alley and got into a white Yukon truck with tinted windows. He identified Defendant in court. He repeated the events of the August night adding that he saw the gun in question in Defendant's hand, on August 9, the first robbery, but not in the second. At the latter time the gun was in the hands of the other man. Defendant was also identified by Alan Terry, a witness to the August robbery.

On November 3, 2003 Warren Police Officer David Maye responded to a robbery at one o'clock in the morning. He obtained a description of the perpetrators: two black males, approximately 5' 6" or 7", wearing gray hooded sweatshirts. He stationed himself on the street where he thought they would pass. He saw a black Chevy Tahoe traveling in the opposite direction with two black males, both wearing some type of light-colored shirts. He effected a traffic stop upon which the front passenger fled, pursued by responding backup officers. He arrested Defendant who was the driver and who refused to obey the officer's commands and started to walk away. Other officers assisted him in handcuffing Defendant. On his person the witness found a black ski mask and nickel rolls on the rear passenger seat together with trays for rolled coins on the front dashboard, gloves and a maize and gold jacket. Underneath the backseat he discovered a black and silver handgun. They also recovered a black and tan hooded sweatshirt. The pistol was a .25 caliber semi automatic Lorkin.

When he was arrested, Defendant told the officer that he was abducted at gunpoint by the man who ran from the car. The officer testified that the licence plate was identified to Defendant at 15470 Parker Grove in Detroit. The witness had been told that Tyrone Moon lived at that same address. The witness did some investigation of the anomaly that the three people involved in this case all lived at that address. The witness pointed out Ms. Holloway did not live there at that time.

Defendant testified that at the time he had recently been released from prison for armed robbery, of which he had been twice convicted. At one time, he had met Ursula Holloway at a family reunion at Belle Isle and at the time had a discussion with Tyrone and Gulley Moon, who lived at 15470 Parker Grove, which is where Defendant lives, which is the same address that was given by Ursula Holloway.

Defendant had an agreement with Ursula who told him that they could get money. His understanding was that they could come in, get the money and walk away. She was going to give him the money and he was going to walk away, meet her later and split it.

He acknowledged that he was at that Wendy's on August 9, 2003. She told him that she had some young people working for her and he should not scare them. Just walk her back to the safe. "Once you go to the safe, I got the money in the drive-through window." When he got to the drive-through window he saw a car sitting there which frightened him so he left through the backdoor; leaving with some money. Later, Ursula called him on his cell phone to meet with him at a White Castle where she expressed anger because he failed to get all the money. At that time he handed her her share, about $140. He next received a call from her to meet him at the White Castle the next morning. She said she had the perfect plan. He refused but then agreed. She told him about parking her truck in the back of a garbage can. When they came out, he took them back in, went to the safe and got the money. He was accompanied by a man named Pooh, Freddie Williams. He then got in the truck and went home. He explained that he had resisted the officer because he was agitated.

Def.-Appellant's Br. on Appeal, in *People v. Holloway*, No. 258671 (Mich. Ct. App.), at 1-7 (citations to trial transcript omitted).

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Prosecutorial Misconduct (Claims I & IV)*

In his first and fourth habeas claims, petitioner contends that he was denied a fair trial by the prosecutor's misconduct. In his firth claim, he argues that the prosecutor committed misconduct by improperly shifting the burden of proof. In his fourth claim, he contends that the prosecutor's comments constituted a constructive amendment of the information. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

2. *Analysis*

a. *Shifting Burden of Proof*

Petitioner first contends that the prosecutor impermissibly shifted the burden of proof. At trial, petitioner testified that Urslia Holloway was involved in the theft, and counsel argued that petitioner therefore could not be guilty of robbing her. Petitioner also testified that he and Urslia Holloway were at a family reunion together shortly before the robberies, at which time she solicited his help in embezzling money from the Wendy's under the guise of a fictitious robbery. Also present were Tyrone and Gulley Moon, his nephews who resided with him. *See* Trial Tr., Vol. II, at 48-53. On cross-examination, the prosecutor asked petitioner: "Where are the Moons today?" *Id.* at 68. Defense counsel objected, and the objection was overruled. The prosecutor then elicited that the Moon brothers were not present in court to testify. *See id.* at 69. Petitioner contends that

these questions impermissibly shifted the burden of proof to him. The Michigan Court of Appeals rejected this claim, reasoning that "a prosecutor's comment on a defendant's failure to produce a witness who would support his defense does not shift the burden of proof, but rather permissibly questions a defendant's credibility and highlights the weaknesses of the defense." *Holloway*, 2006 WL 1112946, at *2, slip op. at 3. This determination was reasonable.

A prosecutor may comment on a defendant's failure to call witnesses or offer other evidence to support his factual theories so long as the prosecutor's comment does not implicate a defendant's right not to testify. *See United States v. Bautista*, 23 F.3d 726, 733 (2d Cir. 1994); *United States v. Williams*, 990 F.2d 507, 510 (9th Cir. 1993); *United States v. Sensi*, 879 F.2d 888, 900 (D.C. Cir. 1989); *United States v. Dahdah*, 864 F.2d 55, 59 (7th Cir. 1988). Thus, it is well "established that the government may comment on a defendant's failure to call witnesses to support his factual theories." *Bautista*, 23 F.3d at 733; *accord United States v. Robles-Vertiz*, 155 F.3d 725, 731 (5th Cir. 1998). Here, the prosecutor's questions about the Moon brothers did not "sugges[] to the jury that the petitioner was obligated to prove his innocence. Rather, [they suggested] that the petitioner's . . . testimony was unsupported and not worthy of belief. Thus, the prosecutor's [questions] did not shift the burden of proof to the defense and did not violate the petitioner's constitutional rights." *March v. Bock*, No. 00-CV-10495, 2003 WL 21488691, at *8 (E.D. Mich. June 12, 2003) (Lawson, J.). Further, "any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof." *Stewart v. Booker*, No. 07-14081, 2009 WL 973343, at *5 (E.D. Mich. Apr. 9, 2009) (Cohn, J.) (citing *Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir.2002)). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

*b. Notice of Charges*

Petitioner also contends that he was deprived of notice of the charges against him when the

prosecutor argued that he could be convicted of armed robbery for robbing someone other than

Urslia Holloway:

> Now, the employees in the Wendy's at the time on both days they were placed in the same situation as Ms. Holloway. They were all subject to the armed robbery. They were forced to go in the back and squat down at gunpoint. If Ms. Holloway was involved in it, what about them.
> Aren't they victims just as well. Weren't they robbed? I find it hard to believe that you can say, well, I can go into a restaurant and rob at gunpoint with five employees there or three employees, or whatever there was, and because one of them may know it's not an armed robbery. It just doesn't make sense to me. And I don't think the law works that way.

Trial Tr., Vol. II, at 83. Petitioner contends that this amounted to an amendment of the information,

because the information charged him solely with robbing Urslia Holloway. The Michigan Court of

Appeals disagreed, explaining that the prosecutor's statement was more appropriately analyzed as

a misstatement of the law, and as so analyzed the misstatement was not prejudicial because the trial

court correctly instructed the jury on the law. *See Holloway*, 2006 WL 1112946, at *3, slip op. at

4. This determination was reasonable.

At the outset, the court of appeals was correct in rejecting petitioner's claim that the

prosecutor's comment amounted to an amendment of the information. "A constructive amendment

results when the terms of an indictment are in effect altered by the presentation of evidence and jury

instructions which so modify essential elements of the offense charged that there is a substantial

likelihood that the defendant may have been convicted of an offense other than the one charged in

the indictment." *United States v. Smith*, 320 F.3d 647, 656 (6th Cir.2003) (citing *Stirone v. United

States*, 361 U.S. 212 (1960)). Here, petitioner does not allege that the evidence and jury instructions

modified the charges against him, only that the prosecutor's comments did so.  However, he has cited to no case, and I have found none, suggesting that a prosecutor's misstatement of the law during closing argument alone can amount to a constructive amendment.   On the contrary, the courts that have considered such claims have rejected them, treating the claims as misstatement-of-law claims as the court of appeals did in petitioner's case.  *See United States v. Luu*, 544 F.3d 361, 369 (1st Cir. 2008); *United States v. Richards*, 209 Fed. Appx. 561, 567 (7th Cir. 2006); *United States v. Fortgang*, 77 Fed. Appx. 37, 39 (2d Cir. 2003); *United States v. Williams*, 106 F.3d 1173, 1176 & n.2 (4th Cir. 1997).

Petitioner is correct that the prosecutor misstated the law.  Petitioner was charged in the indictment with robbing only Urslia Holloway, and thus the prosecution was required to prove that petitioner robbed her, not some other person.  However, where the trial court correctly instructs the jury on the law and admonishes the jury that only its instructions on the law were to be followed, a defendant cannot show that he was prejudiced by the prosecutor's misstatement of the law.  *See United States v. Wadlington*, 233 F.3d 1067, 1079 (8th Cir. 2000); *United States v. Gonzalez-Gonzalez*, 136 F.3d 6, 9 (1st Cir. 1998).  Here the trial court did both.  The court's instruction on the armed robbery repeatedly informed the jury that it had to find that petitioner robbed Urslia Holloway specifically.   Setting forth the various elements of the offense, the court instructed that the prosecutor had to prove beyond a reasonable doubt:

> First, that the defendant assaulted *Urslia Holloway*.  There are two ways to commit an assault.  Either the defendant must have attempted or threatened to immediately injure – to do an immediate injury, rather, to *Urslia Holloway*, and was able to do so or the defendant must have committed a forceful act that made *Urslia Holloway* reasonably afraid of being injured at the time.
> * * * *
> Fourth, that this money was taken from the person of *Urslia Holloway* or in his or her presence.

\* \* \* \*

Sixth, that at the time he took the money, the defendant intended to take it away from *Urslia Holloway* permanently.

Trial Tr., Vol. II, at 113-14 (emphasis added). The court also instructed that jury that "[t]he lawyers' statements and arguments are not evidence," *id*. at 109, and that "[i]t is my duty to instruct you on the law. You must take the law as I give it to you. If a lawyer says something different about the law, follow what I say." *Id*. at 107. In light of these instructions, petitioner was not prejudiced by the prosecutor's misstatement of the law, and the statement did not amount to a constructive amendment of the charges. *See Richards*, 209 Fed. Appx. at 567; *Williams*, 106 F.3d at 1176 & n.2. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Submission of Conspiracy Charge (Claim II)*

In his second claim, petitioner contends that the trial court erred in denying his motion for a directed verdict on the conspiracy charge. Relatedly, he argues that the court's instruction on the conspiracy charge was erroneous because it omitted key elements. Respondent argues that this claim is not properly before the Court. As respondent notes, the charges relating to the August 9 and November 3 robberies were charged in separate cases, although tried together. The conspiracy charge related only to the November 3 robbery. On appeal, the Michigan Court of Appeals explained that "appeal is taken only from Holloway's convictions arising from the August 2003 offense. Although some of Holloway's issues on appeal relate to his convictions arising from the November 2003 offense, he has not filed a claim of appeal from those convictions. Therefore, this Court does not have jurisdiction to consider any issues related to the November 2003 offense." *Holloway*, 2006 WL 1112946, at \*1, slip op. at 2. Respondent argues, therefore, that petitioner has not properly exhausted this claim in the state courts. Petitioner replies that the cases were

consolidated for trial, and that his notice of appeal indicated that he was appealing both cases. The Court need not resolve whether this claim was properly exhausted, because the claim is without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the court of the State.").[3]

1.    *Clearly Established Law*

Petitioner's claim that the trial court erred in failing to grant his motion for a directed verdict is essentially a claim that the evidence was insufficient to support his conspiracy conviction.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application

---

[3]Petitioner's related jury instruction claim is discussed in the following section.

of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir.

1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v.

DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998). The same standards apply to a trial court's verdict

following a bench trial. *See United States v. Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992); *Swaizey

v. Davis*, No. 07-11776, 2009 WL 68652, at *8 n.1 (E.D. Mich. Jan. 9, 2009) (Duggan, J., adopting

recommendation of Komives, M.J.).

While a challenge to the sufficiency of the evidence on an established element of an offense

raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S.

at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how

a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197,

211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691

(1975). Thus, "[a] federal court must look to state law to determine the elements of the crime."

*Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Petitioner does not challenge the sufficiency of the evidence with respect to the substantive

armed robbery charge; rather, he challenges only the related conspiracy conviction. Under

Michigan law any person who conspires with one or more other persons to commit an offense

prohibited by law is guilty of the crime of conspiracy, and, in the case of felonies, is punished to

the extent he would be punished if found guilty of the underlying substantive offense. *See* MICH.

COMP. LAWS § 750.157a(a). Under Michigan law,

> [c]riminal conspiracy is a mutual understanding or agreement between two or more
> persons, expressed or implied, to do or accomplish some criminal or unlawful act.
>     The gist of the offense lies in the unlawful agreement between two or more
> persons to do the unlawful act. All the requisite elements of the crime of
> conspiracy are met when the parties enter into the mutual agreement, and no overt
> acts necessarily must be established.

*People v. Hamp*, 110 Mich. App. 92, 102, 312 N.W.2d 175, 180 (1981) (citations omitted); *see also*, *People v. Buck*, 197 Mich. App. 404, 412, 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993). "Direct proof of agreement is not required, nor is proof of a formal agreement necessary. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement." *People v. Cotton*, 191 Mich. App. 377, 393, 478 N.W.2d 681, 688 (1991); *see also*, *Cameron v. Birkett*, 348 F. Supp. 2d 825, 839 (E.D. Mich. 2004) (Gadola, J., adopting Report of Komives, M.J.). "'A two-fold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective.'" *Cameron*, 348 F. Supp. 2d at 839 (quoting *People v. Carter*, 415 Mich. 558, 568, 330 N.W.2d 314, 319 (1982)).

2.      *Analysis*

Petitioner argues that the prosecutor produced no evidence that he conspired with someone else to rob Urslia Holloway, nor did the prosecutor suggest or disclose the names of petitioner's coconspirators. The Court should conclude that this claim is without merit.

As noted above, direct proof of a conspiracy is not required; rather, "[i]t is sufficient that the circumstances, acts, and conduct of the parties establish an agreement." *Cotton*, 191 Mich. App. at 393, 478 N.W.2d at 688; *see also*, *People v. Justice*, 454 Mich. 334, 348, 562 N.W.2d 652, 659 (1997). Here, the witnesses to the November 3 robbery–Urslia Holloway, Dorian Sumerlin, and Anthony Patterson–all testified that the robbery was accomplished by two men working together and in concert with one another. *See* Trial Tr., Vol. I, at 116-20, 142-43, 150-53. This evidence "shows a plan and concert of action that lead to the inference of both the existence of a conspiracy and an intent to accomplish an illegal objective." *Cotton*, 191 Mich. App. at 393-94, 478 N.W.2d at 689;

*cf. United States v. Westry*, 524 F.3d 1198, 1212 (11th Cir. 2008) ("A conspiracy may be inferred from a 'concert of action.'"); *United States v. Lopez*, 979 F.2d 1024, 1029 (5th Cir. 1992) ("Concert of action can indicate agreement and voluntary participation."). Further, it is irrelevant that petitioner's coconspirator was not identified at trial. It is well established that so long as the existence of an agreement with another person is established, the identity of that other person is not an element of the crime of conspiracy, and thus "[t]he failure of the government to be able to name and personally identify the other conspirator is not fatal to a conspiracy conviction." *United States v. Obialo*, 23 F.3d 69, 72 (3d Cir. 1994) (citing *Rogers v. United States*, 340 U.S. 367, 375 (1951) ("[T]he identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown.")); *see also*, *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006). This reflects the common law view, *see* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 12.4(c)(1) & nn.75-77 (2d ed.), and the Michigan statute reflects a codification of the common law with respect to conspiracy, *see Justice*, 454 Mich. at 345 & n.17, 562 N.W.2d at 657 & n.17. Thus, the Michigan courts follow this approach. *Cf. People v. Williams*, 240 Mich. App. 316, 329-31, 614 N.W.2d 647, 652-54 (2000).

In support of his claim, petitioner relies on the common law "one man conspiracy" rule. That rule, applicable under § 750.157a, "provides that if two are tried together for a conspiracy in which no additional persons are implicated, a verdict finding one guilty and the other not guilty requires a judgment of acquittal of both." *People v. Anderson*, 418 Mich. 31, 36, 340 N.W.2d 634, 635 (1983) (citation omitted) (opinion of Ryan, J.). The purpose of that rule is to prevent inherently inconsistent verdicts, *see id.*, and thus it is not implicated where there is no trial and acquittal of a coconspirator. Thus, "[c]ontrary to [petitioner's] argument, the rule, as enunciated in *Anderson*, did

not require that another person be convicted of conspiracy to commit armed robbery before [petitioner's] conspiracy conviction could be deemed legally sound," *People v. Brooks*, No. 271931, 2009 WL 1506897, *7 (Mich. Ct. App. May 28, 2009), nor did the rule require the prosecution to identify the coconspirator. *See People v. Rodriguez*, 251 Mich. App. 10, 24-25, 650 N.W.2d 96, 106 (2002) (information charging that defendant conspired with "others" not defective); *Williams*, 240 Mich. App. at 329-31, 614 N.W.2d at 652-54. All that is required under the statute is that petitioner have conspired with someone to commit an armed robbery, regardless of the identity of that other person. Because the evidence of concerted action was sufficient to raise an inference of an agreement, there was sufficient evidence to support petitioner's conspiracy conviction. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Jury Instructions (Claims II & III)*

Petitioner next contends that he was denied a fair trial by the trial court's improper jury instructions. Specifically, he contends that the trial court gave an erroneous instruction on the elements of conspiracy, and that the court erred in failing *sua sponte* to give an instruction on his theory of the case. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).

Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). In short, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

2.      *Analysis*

a. *Conspiracy Instruction*

Petitioner first contends that the court's instruction on the elements of conspiracy was improper, because it failed to inform the jury that it must find that he "conspired with 'someone else' to rob" Urslia Holloway, and because it "omitted the necessary element that in order to find Petitioner guilty of conspiracy to commit armed robbery, the jury must find the conspiracy to have existed between Petitioner and the person(s) that the prosecution was alleging that Petitioner conspired with." Br. in Supp. of Pet., at 14. These arguments are without merit.

With respect to the latter argument, as explained above in connection with petitioner's sufficiency of the evidence claim the prosecution was not required to prove the identity of the person with whom petitioner conspired. It was sufficient for the prosecution to show that petitioner conspired with some other person, regardless of the identity of that person. Thus, the court's instruction was not erroneous for failing to inform the jury that it must find the identity of the coconspirator beyond a reasonable doubt.

With respect to the former argument, a review of the jury instruction reveals the argument to be without merit. In instructing the jury on the elements of conspiracy, the jury was instructed that the prosecution was required to prove beyond a reasonable doubt "that the defendant *and someone else* knowingly agreed to commit the crime of armed robbery." Trial Tr., Vol. II, at 116 (emphasis added). In further explaining the necessary "agreement," the court instructed the jury that "[a]n agreement is the coming together or meeting of the minds *of two or more people*." *Id*. at 117 (emphasis added). The remainder of the instruction repeatedly references the "member*s* of the conspiracy." *Id*. at 117-18. These instruction adequately informed the jury that the prosecution was required to prove that petitioner had agreed with another person to commit armed robbery. Indeed, the court's instructions were a verbatim recitation of Michigan's standard criminal jury instructions on conspiracy. *Compare* Trial Tr., Vol. II, at 116-18, *with* MICHIGAN CRIMINAL JURY INSTRUCTIONS 2D §§ 10.1-10.4. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Theory of the Case Instruction

Petitioner also contends that the trial court erred in failing *sua sponte* to give an instruction on his theory of the case. As a general matter, petitioner contends that his theory of the case was

that Urslia Holloway was involved in the theft, and that at most he was guilty of aiding and abetting her embezzlement. He contends that the court's instructions did not adequately present this theory to the jury so as to allow the jury to acquit him if it believed his version of events. This claim is without merit.

The failure to give a defense-theory instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). Thus, a failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). As the Supreme Court has noted, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Here, petitioner through his own testimony, and defense counsel through both vigorous cross-examination of Urslia Holloway and closing arguments, adequately presented to the jury petitioner's theory that he merely assisted Holloway in her embezzlement of money from her employer and thus could not have committed an armed robbery against her. And as explained in connection with petitioner's prosecutorial misconduct claim, the judge repeatedly instructed the jury that it could find petitioner guilty of armed robbery only if the prosecution proved that petitioner assaulted Urslia Holloway, that petitioner took property from Urslia Holloway, and that petitioner intended to permanently deprive Urslia Holloway of this property. *See* Trial Tr., Vol. II, at 113-14. Had the jury accepted petitioner's theory of the case, it could not have found any of these elements. Thus, the jury instructions adequately allowed the jury to consider petitioner's theory of the case and acquit him

if the jury believed his version of events.  Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction.  *See, e.g.*, *Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically as [he] would have liked," and the instructions, "considered together, and along with counsel's argument and cross examination . . . should have reasonably conveyed to the jury [petitioner's] theory of the case."); *Conner v. Director of Div. of Adult Corrections, State of Iowa*, 715 F. Supp. 925, 934 (N.D. Iowa 1987), *aff'd*, 870 F.2d 1384, 1388 (8th Cir. 1989); *cf. United States v. Dees*, 34 F.3d 838, 842 (9th Cir. 1994) (on direct review of criminal conviction, "[i]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory.").

In addition to this general claim, petitioner raises two more specific claims.  First, he contends that court should have given an instruction on aiding and abetting embezzlement as a lesser offense.  This claim is without merit, for two reasons.  First, this claim does not present a cognizable basis for habeas review.  Although the Eighth Amendment and the Due Process Clause require that a trial court instruct the jury on lesser included offenses in the context of a capital case, *see Beck v. Alabama*, 447 U.S. 625, 637-38 (1980) (trial court required to instruct *sua sponte* on lesser included offenses where the failure to do so would result in the jury being given an "all or nothing" choice of convicting on the capital charge or acquitting the defendant), "the Constitution does not requires a lesser-included offense instruction in non-capital cases."  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001).  As the Sixth Circuit has noted, even where a lesser offense instruction is requested,

the failure of a court to instruct on a lesser included or cognate offense in a non-capital case is generally "not an error of such magnitude to be cognizable in federal habeas corpus review." *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc); *see also*, *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002). At a minimum, there is no clearly established Supreme Court law which requires the giving of a requested lesser offense instruction in the non-capital context, as is required for habeas relief under § 2254(d)(1). *See Samu v. Elo*, 14 Fed. Appx. 477, 479 (6th Cir. 2001); *Kuroda v. Bell*, No. 2:07-CV-12310, 2007 WL 1657410, at *2 (E.D. Mich. June 7, 2007) (Cohn, J.); *Adams v. Smith*, 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (Tarnow, J.).

Further, even if otherwise cognizable, petitioner's claim is without merit, because he was not entitled to an embezzlement instruction as a matter of state law. Under Michigan law, a defendant is entitled only to an instruction on a necessarily included lesser offense supported by the evidence. *See People v. Cornell*, 466 Mich. 335, 357, 646 N.W.2d 127, 140 (2002); Mich. Comp. Laws § 768.29. Under Michigan law, "the elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v. Smith*, 478 Mich. 292, 319, 733 N.W.2d 351, 365 (2007). The elements of embezzlement, on the other hand, are: "(1) the money in question must belong to the principal, (2) the defendant must have a relationship of trust with the principal as an agent or employee, (3) the money must come into the defendant's possession because of the relationship of trust, (4) the defendant dishonestly disposed of or converted the money to his own use or secreted the money, (5) the act must be without the consent of the principal, and (6) at the time of conversion, the defendant intended to defraud or cheat the principal." *People v. Lueth*, 253 Mich. App. 670, 683, 660 N.W.2d 322, 332 (2002). The embezzlement statute therefore contains several elements which are not

subsumed by the armed robbery statute, in particular the requirements of an agency relationship and possession of the property by virtue of the relationship of trust. It is thus "plain that the elements of [embezzlement] are not completely subsumed in the elements of [armed robbery]. . . . Because it is possible to commit [armed robbery] without first committing [embezzlement], [embezzlement] cannot be a necessarily included lesser offense of [armed robbery]." *People v. Smith*, 478 Mich. 64, 71, 731 N.W.2d 411, 415 (2007). Thus, petitioner was not entitled to an embezzlement instruction under state law, and the trial court's failure to give such an instruction provides no basis for habeas relief.

Petitioner also argues that the court erred in failing to give a cautionary instruction on the dangers of accomplice testimony with respect to the testimony of Urslia Holloway, who he claimed was not the victim of a robbery, but an accomplice to embezzlement. The federal courts have repeatedly held that a criminal defendant has no constitutional right to an accomplice witness instruction, and thus the failure of a state court to give such an instruction does not provide a basis for granting habeas relief. *See Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000); *Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir. 1995); *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985); *Grant v. Rivers*, 920 F. Supp. 769, 783 (E.D. Mich. 1996) (Gadola, J.); *Smithwick v. Walker*, 758 F. Supp. 178, 186 (S.D.N.Y.), *aff'd*, 948 F.2d 1278 (2d Cir. 1991). This is particularly true where, as here, the trial court did give a general instruction that the jury is to determine the credibility of all the witnesses. *See Kappos*, 54 F.3d at 367. As the court of appeals explained, "defense counsel cross-examined Urslia Holloway regarding her relationship to Holloway and the consequences of embezzlement. And he vigorously questioned Urslia Holloway's credibility in closing argument." *Holloway*, 2006 WL 1112946, at *4, slip op. at 5-6. Thus, petitioner cannot show that he was denied

a fair trial by the absence of an accomplice witness instruction, and his instructional error claims relating to his theory of the case are without merit.

G.     *Ineffective Assistance of Counsel (Claim V)*

Finally, petitioner contends that his trial counsel rendered constitutionally ineffective assistance in a number of respects. Specifically, he contends that counsel was ineffective for failing to: (1) object to the prosecutor's misstatement of the law; (2) request instructions on his theory of the case; (3) object to the trial court's conspiracy instruction; (4) call Patricia Carson as a witness; and (5) request a limiting instruction regarding petitioner's prior convictions. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

    2.    *Analysis*

    *a. Prosecutorial Misconduct and Jury Instructions*

Petitioner contends that counsel was ineffective for failing to object to the prosecutor's misstatement of the law with respect to the victim of the armed robbery. As explained in connection with that underlying claim, however, the trial court's instructions adequately explained to the jury both that the prosecution had to prove that petitioner robbed Urslia Holloway and that the jury should consider only the court's instructions on the law, and therefore petitioner was not prejudiced by the prosecutor's misstatement. It therefore follows that petitioner was not prejudiced by counsel's failure to object to the misstatement. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial).

Petitioner also contends that counsel was ineffective for failing to request an instruction on the defense theory of the case. However, as explained in connection with that underlying claim, the

instructions as given, combined with petitioner's evidence and argument, adequately presented petitioner's theory of the case. Further, the Michigan Court of Appeals concluded that neither an embezzlement instruction nor an accomplice witness instruction was warranted under state law. In analyzing petitioner's ineffective assistance of counsel claims, this expression of state law is binding on this Court. *See Basile v. Bowersox*, 125 F. Supp. 2d 930, 960 (E.D. Mo. 1999). *See generally*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sarausad v. Porter*, 503 F.3d 822, 824 (9th Cir. 2007) ("A determination of state law by a state appellate court is . . . binding in a federal habeas action."). Counsel cannot be deemed ineffective for failing to request an instruction which was not appropriate under state law. *See Mitzel v. Tate*, 267 F.3d 524, 538 (6th Cir. 2001). Likewise, counsel was not ineffective for failing to object to the conspiracy instruction because, as explained above, that instruction accurately stated the law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

### b. Failure to Call Witness

Petitioner next contends that counsel was ineffective for failing to call Patricia Carson as a witness at trial. "Complaints of uncalled witnesses are not favored in federal habeas review." *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Aponte v. Scully*, 740 F. Supp. 153, 158 (E.D.N.Y. 1990). As one court has explained:

> The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial. [Defendant] does not identify any witnesses that his counsel should have called who would have been helpful. Defense counsel's conduct in this regard appears to fall within the wide range of reasonable professional representation. Decisions whether to engage in cross examination, and if so to what extent and in what manner, are similarly strategic in nature.

*United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *accord Reese v. Fulcomer*, 946 F.2d

247, 257 (3d Cir. 1991) (counsel's performance not deficient where counsel did not call alibi witness whose testimony could have been damaging); *United States v. Porter*, 924 F.2d 395, 397 (1st Cir. 1991) (decision not to call witnesses who could have incriminated defendant within scope of informed professional judgment). Further, it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007); *Dows v. Woods*, 211 F.3d 480, 486 (9th Cir. 2000).

Here, petitioner contends that Carson would have corroborated his testimony regarding Urslia Holloway's involvement in the theft from the restaurant. However, other than his own affidavit, he has presented no evidence or affidavit from Carson herself establishing that she was willing to testify and what her testimony would have been. In any event, during trial counsel indicated that he could not locate Carson. *See* Trial Tr., Vol. II, at 5. Petitioner contends that this assertion was untrue, and that in fact Carson was in the courtroom with petitioner's sister. Petitioner's assertion rings hollow, however, in light of the fact that counsel's statement was made (twice) in open court, and neither petitioner nor Carson, who was allegedly in the courtroom, corrected counsel's statement. Thus, petitioner cannot establish that counsel was ineffective. *See United States v. White*, 341 F.3d 673, 680 (8th Cir. 2003) (counsel not ineffective for failing to call

witness who could not be located).

### c. Failure to Request Limiting Instruction

Finally, petitioner contends that counsel was ineffective for failing to request a limiting instruction regarding the use of his prior convictions. The Michigan Court of Appeals rejected this claim, concluding both that petitioner failed to "overcome the presumption that defense counsel declined to request a cautionary instruction as a matter of strategy because he did not want to highlight Holloway's convictions any more by requesting an instruction," and that petitioner could not show prejudice because "the prosecutor narrowly focused his questions and closing argument, asserting that Holloway's past armed robbery convictions gave him a reason to lie due to his parole status at the time of the instant offenses" and "never attempted to use the convictions for an improper purpose." *Holloway*, 2006 WL 1112946, at *4, slip op. at 6. This determination was reasonable. As the court of appeals noted, the prosecutor did not explicitly or implicitly argue that the jury should consider petitioner's prior convictions as evidence of his guilt. Rather, the prosecutor argued only that his prior robbery convictions, containing as they did an element of theft, reflected on his credibility. Indeed, during closing argument the prosecutor did not even go this far, only arguing that petitioner had a motive to lie because, if convicted, he would go back to prison. *See* Trial Tr., Vol. II, at 83. Because the evidence was properly admitted as impeachment evidence under Rule 609, and because the prosecutor did not argue that the jury should use the evidence for an improper purpose, the absence of a limiting instruction was harmless. *See United States v. Elam*, 283 Fed. Appx. 554, 556 (9th Cir. 2008). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability, for the reasons explained above. The prosecutor's comments did not improperly shift the burden of proof, and any misstatement of law was corrected by the trial court's instructions that the jury had to find that petitioner robbed Urslia Holloway. Thus, the resolution of petitioner's prosecutorial misconduct claims is not reasonably debatable. With respect to the conspiracy claim, it is clear that the prosecutor was not required to prove the identity of petitioner's coconspirator, and the evidence of concerted action was sufficient to permit an inference of an agreement to commit an armed robbery. Thus, the resolution of this claim is not reasonably debatable. With respect to petitioner's instructional error claims, as explained above the conspiracy instruction comported with Michigan

law and adequately instructed that petitioner had to have come to an agreement with some other person, the instructions given adequately conveyed petitioner's theory of the case, and petitioner was not entitled to an instruction on embezzlement as a matter of state law. Thus, the resolution of these claims is not reasonably debatable. Finally, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable, for the reasons explained above. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 6/21/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 21, 2010.

s/Eddrey Butts
Case Manager